**BRENTMOOR PLACE RESIDENTS ASSOCIATION, Appellant,**

v.

**Ray F. WARREN and Katherine B. Warren, Respondents.**

**No. 59232.**

Missouri Court of Appeals, Eastern District, Division Two.

Sept. 10, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 9, 1991.

---

Edward K. Fehlig, Ziercher & Hocker, P.C., Clayton, for appellant.

Michael J. McAvoy, McAvoy & Allan, Fenton, for respondents.

AHRENS, Judge.

In this bench-tried action for injunctive relief, appellant Brentmoor Place Residents Association ("the Association") appeals from the trial court's judgment in favor of respondents Ray and Katherine Warren. We reverse and remand.

Respondents own real property as tenants by the entirety in Brentmoor Place, a 110 lot residential subdivision in St. Louis County. A recorded "Indenture of Trust and Restrictions" governs the construction of fences and other structures in the subdivision. The Association, incorporated in 1979 as a Missouri not for profit corporation, acts as trustee for the subdivision. The subdivision's lot owners are members of the Association which is headed by a three-member Board of Directors.

In November, 1986, Mr. Warren sent a letter to Jack Shugart, chairperson of the Association's Architectural Review Committee, requesting approval to erect a coach light, fence, satellite dish antenna, and shed on his lot. That letter was postmarked November 24, 1986. At the direction of Board members Edmund Hugill and Mike Beckwith, and within the thirty days required by the Indenture of Trust and Restrictions, Shugart informed Mr. Warren in a December 24, 1986, letter to consider the requests "not approved" pending a meeting to discuss each item. The Committee met on January 10, 1987, with Hugill and Beckwith, among others, in attendance. On the Committee's recommendation, Hugill and Beckwith, in their capacity as Board members, approved Mr. War-

ren's request to install the coach light, but denied approval of his requests to erect the fence, shed and satellite dish antenna. Shugart informed Mr. Warren of the Board's decision in a January 12, 1987, letter. The letter also informed Mr. Warren that prior to further consideration of the fence, "a more precise drawing" of its "placement, construction and location" was required. The Association received no additional specifications or drawings. The Warrens, however, proceeded to erect the fence, shed, and satellite dish antenna.

The Association filed an action for injunctive relief against Mr. Warren. Following a hearing, the trial court issued an injunction against Mr. Warren mandating removal of the fence, shed, and satellite dish antenna; and permanently enjoining construction of those items on the lot.

Mr. Warren appealed from that judgment, alleging there was no substantial evidence to support the trial court's findings, and the absence of his wife as a party to the action deprived the trial court of jurisdiction. *Brentmoor Place Residents Ass'n v. Warren*, 774 S.W.2d 877 (Mo.App. 1989). This court concluded there was substantial evidence to support the trial court's findings. We reversed and remanded, however, for a determination of whether the lot was owned by the Warrens as tenants by the entirety, which would make Mrs. Warren a necessary party to the action. *Id.* at 879.

On remand, the Association filed an amended petition adding Mrs. Warren as a defendant. Mrs. Warren filed an answer and raised as an affirmative defense that: "[A]ny acts complained of by the Defendant were the acts of individuals who were not properly constituted directors or officers of the Brentmoor Place Residents Association when they were never properly elected. Said individuals attempted to conduct business on behalf of [the Association] when they were never properly elected." Upon Mrs. Warren's application, the case was transferred to a different judge.

Following a hearing, the trial court entered its findings of fact, judgment and decree denying the Association's request for injunctive relief. The trial court found, "No meeting was ever called pursuant to the provisions of the bylaws"; and "no meeting was ever held to elect Edmund F. Hugill as Trustee [1], and since no quorum was present at such a meeting, Edmund F. Hugill was not duly elected as a Trustee pursuant to the bylaws." The trial court further found, "At all times in question, no legally appointed Board of Trustees or Board of Directors ever met to consider and deny the application of defendant for permission to erect the fence, antenna and utility shed."

Appellant raises three points of error, and requests the case be remanded to award it attorney's fees pursuant to the subdivision Indenture of Trust and Restrictions and appellant's First Amended Petition. We find one point dispositive: The trial court erred in denying the Association's request for injunctive relief, because the trial court's findings that Hugill was not a duly elected trustee, and that no legally appointed Board of Trustees met to consider the Warrens' application are not supported by substantial evidence.

Under *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976) we are to sustain the trial court's judgment "unless there is no substantial evidence to support it...." *Id.* at 32. Although Mrs. Warren alleged as an affirmative defense that the decisions to deny approval of the fence, shed, and satellite dish antenna were made by individuals who were not properly elected directors of the Association, that allegation was not self-proving. "The burden of proof on an affirmative defense rests with the proponent of the defense." *Stewart v. K-Mart Corp.*, 747 S.W.2d 205, 208 (Mo.App.1988); *McLeod v. Marion Laboratories, Inc.*, 600 S.W.2d 656, 657 (Mo.App.1980).

The Warrens presented no evidence to support the affirmative defense. The only evidence before the trial court established that Hugill and Beckwith were duly elected members of the Association's governing board.

1. "Trustee" and "Director" refer to a member of the Association's governing Board.

## I. *Meeting to Elect Hugill*

The Association's corporate charter was forfeited on January 1, 1982. At the time of forfeiture, the Association's Board consisted of Harold, Alan, and David Lieberman. The Indenture of Trust and Restrictions provides that in the event of a forfeiture, title to the common land vests in the Association's last Board, "who shall continue to hold title to such land to exercise all rights granted the Association under the terms of this Indenture." Further, upon forfeiture, successors to the last Board "shall be elected by the owners of lots and parcels in Brentmoor Place in the same manner as provided in the Articles of Incorporation and By–Laws of the Association in effect at the time of such forfeiture, dissolution or liquidation."

In October, 1985, a prior Trustee resigned from the Board. Article II, § 3 of the By–Laws provides that special meetings of the members "may be called by the President, *by the Board of Directors,* or by not less than thirty-four percent (34%) of all of the members of the corporation entitled to vote." Under Article II, § 5 of the By–Laws, notice of meetings "shall be delivered ... either personally or by mail, *by or at the direction of* the President, or the Secretary, or the officer, or *persons calling the meeting,* to each member." (Emphasis added). On October 3, 1985, Hal Lieberman, who was not a Board member or officer of the Association, notified the Association's members "on behalf of the Trustees of Brentmoor Place" that an election to replace the resigning Trustee would be held on November 6, 1985, from 6:30 p.m. to 7:30 p.m. at a display home in the subdivision. Hugill was elected to the Board at that meeting.

Viewed in the light most favorable to the trial court's judgment, the only evidence before the trial court established that Hugill was elected pursuant to the By–Laws at a meeting called at the direction of the subdivision's Board. There was no evidence to support a finding that Hal Lieberman was not acting on behalf of the Board in calling the special meeting. The trial court's finding to the contrary is not supported by substantial evidence. In addition, we find nothing unreasonable or discriminatory in the Association's election procedures. All members had notice of the meeting and an opportunity to vote. Permitting the members to cast votes over a period of one hour, rather than voting at a fixed time was a valid meeting of the Association for the purpose of electing a new Board member. *See State ex rel. Dunbar v. Hohmann,* 248 S.W.2d 49, 50–52 (Mo. App.1952).

## II. *Quorum*

The By–Laws require that at least 51 percent of the Association's members be present in person or by proxy to constitute a quorum for a meeting. On direct examination, Hugill testified that attendance at the election was good, but he did not personally know whether more than 50 percent of the Association's members voted at the meeting. When counsel for the Warrens cross-examined Hugill regarding the presence of a quorum, Hugill stated he had "no way of knowing" how many people voted at that meeting. On redirect examination, however, Hugill acknowledged he had testified in the prior hearing that "about two thirds" of the members voted in the election.

This evidence, viewed in the light most favorable to the trial court's judgment, established only that Hugill did not know whether a quorum of the members attended the meeting. Thus, the evidence did not support a determination that the election was invalid for lack of the requisite quorum.

The only evidence before the trial court established that Hugill and Beckwith were duly elected members of the governing Board. Accordingly, respondents failed to prove their affirmative defense. The trial court's findings to the contrary are not supported by substantial evidence.

## III. *Meeting of Board to Consider Respondents' Requests*

In November, 1986, Beckwith was elected to serve on the Board. Respondent presented no evidence challenging the man-

ner by which Beckwith was elected. The evidence established that Hugill and Beckwith, two of the three Board members, met to consider Mr. Warren's requests. On the recommendation of the Architectural Review Committee, Hugill and Beckwith denied approval of three requested items. The trial court's conclusion that no "legally appointed Board" considered the Warrens' requests was erroneously based in part on an "Annual Registration Report" filed with the Secretary of State and signed by Alan Lieberman on May 4, 1987—one week prior to the date the forfeiture of the Association's corporate charter was rescinded. That report lists the Board of Directors as Harold, Alan, and David Lieberman. We note that although this document was executed in 1987, it is the Association's 1981 Annual Registration Report. Thus, that report identifies the Board as it existed at the time of forfeiture in 1981. The Association's 1987 Interim Registration Report filed on June 10, 1987 identifies the Board of Directors as: Alan Lieberman, Edmund Hugill, and Michael Beckwith. Therefore, the Interim Registration Report reflects the changes that occurred in the Board's membership while the Association's charter was in forfeiture.

Thus, the trial court's determination that no legally appointed Board "ever met to consider and deny the application of [Mr. Warren] for permission to erect the fence, antenna and utility shed," is not supported by substantial evidence

#### IV. *Trial Court's Denial of Injunctive Relief*

■ The greater weight of the evidence established that the Warrens erected the fence, shed, and satellite dish antenna in violation of the Indentures of Trust and Restrictions. The uncontroverted evidence established that the Indentures authorize the Board to "consider, *approve or reject* any and all plans and specifications for *any and all* buildings, accessory buildings, ... proposed for construction and erection" on subdivision lots. Therefore, the Board acted within its authority when it decided to universally deny all requests to build sheds. The evidence sufficiently estab-

lished that while one other lot in the subdivision had a fence of the type erected by the Warrens, the Board had denied approval of that fence.

Further, with regard to the satellite dish antenna, the only evidence before the trial court was that the Board had not approved any request to install a satellite dish antenna in the subdivision. Respondents assert Federal Communications Commission regulations preempt the Association's control over the installation of a satellite dish antenna. That assertion is without merit.

Respondents rely on 47 C.F.R. § 25.104 (1986) which preempts "State and local government zoning or other regulations that differentiate between satellite receive-only antennas and other types of antenna facilities...." The restrictive covenant prohibiting the installation of any structure in the subdivision without the Association's approval gave the Board authority to deny the Warrens' request to install the satellite dish antenna. That restrictive covenant cannot be deemed "state and local government zoning," or other state and local government regulation; rather, it is a private contractual obligation. *See Big River Hills Ass'n v. Altmann*, 747 S.W.2d 738, 742 (Mo.App.1988) ("Generally, the rules governing construction of restrictive covenants on realty are the same as those applicable to any covenant or contract."); *Jenkins v. John Taylor Dry Goods Co.*, 352 Mo. 660, 179 S.W.2d 54 (1944) (A covenant is a promise, an agreement or a contract).

"In the very nature of subdivision restrictions much discretion must be vested with the trustees." *Kuhs v. Kawelaske*, 516 S.W.2d 309, 311 (Mo.App.1974); *see Melson v. Guilfoy*, 595 S.W.2d 404, 407 (Mo.App.1980). There was no evidence the governing Board unreasonably or discriminatorily exercised its discretion to withhold approval of the Warrens' requests to erect the fence, shed, and satellite dish antenna. *See id.* Therefore, the trial court should have entered judgment in favor of the Association on its amended petition for injunctive relief.

The trial court's judgment is reversed. The cause is remanded with directions to enter judgment in favor of appellant on its petition for permanent injunctive relief against respondents mandating removal of the fence, shed, and satellite dish antenna; and permanently enjoining construction of those items on respondents' lot. In addition, the trial court is directed to conduct a hearing for allowance to appellant pursuant to the Indenture of Trust and Restrictions of a reasonable attorney's fee incurred in connection with the second trial and second appeal of this case, and in addition taking into account those fees incurred prior to filing the amended petition which were reasonably necessary to prepare the case for trial and were not duplicated after the filing of the amended petition.

GARY M. GAERTNER, P.J., and CRIST, J., concur.