**Jack CONNELLY, et al., Respondents,**

v.

**Harold SCHAFER, et al., Appellants.**

No. WD 44846.

Missouri Court of Appeals,
Western District.

Aug. 11, 1992.

Edward J. Essay, Jr., Kansas City, for appellants.

Thomas J. Walsh, Lee's Summit, for respondents.

Before SPINDEN, P.J., and TURNAGE and BRECKENRIDGE, JJ.

SPINDEN, Presiding Judge.

This appeal involves a dispute Harold and Shirley Schafer have with the plaintiffs, some of their neighbors, concerning the Schafer's roof. The plaintiffs contend that the Schafers' asphalt roof violates one of the subdivision's restrictive covenants requiring a wooden roof. The trial court agreed with the plaintiffs and ordered the Schafers to replace their roof with wooden shingles. The Schafers appealed, and we affirm.

In February 1987, the Schafers reroofed their house in the Valle Vista Subdivision[1] in Lee's Summit after getting a permit from the city. When neighbors saw that the Schafers had used asphalt shingles instead of wooden shingles, they sued without giving notice of their intent to the Schafers.

The plaintiffs complained that the Schafers' roof violated Section 9 of the subdivision's restrictive covenants. That section provided, "All roofs on all buildings erected on any plot shall be of a wood-shingle construction."

The Schafers counter that Section 9 was not enforceable against them because of defects in the subdivision's restrictive covenants, including the way they were filed, and because their plaintiff neighbors had waived enforcement of the covenants by their own violations. They further charge the trial court with error in not granting their motions for sanctions and to restrict plaintiffs' evidence because of alleged discovery violations. We conclude that the purported defects did not exist or were not sufficient to nullify the covenants' effect and that the neighbors' violations were not significant enough to constitute waiver. We further conclude that the trial court did not abuse its discretion in overruling the Schafers' motions relating to the discovery dispute.

Because the Schafers did not heed Rule 84.04's requirements concerning the contents of their brief, we are not confident that we have discerned all of their points. The brief was sufficiently lacking to tempt us to strike it, or, at least, deem several of their points abandoned. Out of a sense of justice, however, we have endeavored to overlook the briefs' inadequacies where possible and to address its points as best we could understand them. *Thummel v. King*, 570 S.W.2d 679 (Mo. banc 1978).

### Enforceability of Wooden Roof Requirement

The Schafers complain that the trial court should not have enforced Section 9's requirement of a wooden roof. As best we can determine, they argue that (1) an architectural control committee called for in the restrictive covenants was never established so they had no means of obtaining a variance; (2) the subdivision was replatted without new covenants being filed, nullifying the original covenants; (3) the covenants' certificate of acknowledgment was improper so they were deprived of even constructive notice of the covenants; (4) other homeowners in the subdivision had ignored and violated the covenants so that the restrictions should be deemed waived or abandoned; and (5) conditions had changed in the subdivision and in the quality of the asphalt shingles so as to make it

1. Whether this subdivision legally exists is among the issues at dispute in this case. See page 4, supra.

inequitable for the court to order the Schafers to remove the asphalt shingles.

Architectural Control Committee

Section 5 of the restrictive covenants provided for architectural control:

No building, fence, wall, or other structure shall be erected, placed, or altered on any lot until the construction plans and specifications and the plans showing the location of the structure have been approved by the Architectural Control Committee as to quality of workmanship and material, harmony of external design with existing structures, and as to location with respect to topography and finished grade elevation.

\* \* \* \* \* \*

The Committee's approval or disapproval as required in these covenants shall be in writing. In the event the Committee, or its designated representative, fails to approve or disapprove within thirty (30) days after plans and specifications have been submitted to it, or in any event, if no suit to enjoin the construction has been commenced prior to the completion or within ninety (90) days after the start of the construction, whichever is the later, approval will not be required, and the related covenants shall be deemed to have been fully complied with.

■ The Schafers argue that this section makes "clear that the land's developer intended a committee to be available to determine or otherwise waive resident compliance." They assert, and the trial court so found, that when they reroofed their house, a committee did not exist.[2] The Schafers contend that "absent this committee, to implement the restrictions and otherwise interpret them, the restrictions have no validity."

We disagree. Section 5 did not authorize the committee to alter or vary the restrictive covenants. It mandated that the committee review proposed construction for quality of workmanship and materials and architectural harmony with existing structures. That the committee never functioned and did not exist in 1986 may constitute waiver of that provision, but it would not necessarily constitute waiver of all other provisions. *See Ashelford v. Baltrusaitis*, 600 S.W.2d 581, 587 (Mo.App.1980) ("long continued unbroken practice [of informal, oral approvals by review committee] constituted a waiver and abandonment of the requirement that approvals be in written form," but no other provision).

Resurvey of Subdivision

Valle Vista developers reconfigured the subdivision's lots in 1964—reducing the number from 69 to 62—and filed in 1964 a new plat with city officials entitled Valle Vista Resurvey. The subdivision's outer perimeter remained the same as depicted in the first plat filed in 1963. The developers did not file new restrictions or alter the ones filed in 1963.

■ The Schafers contend that the resurvey was a second, new subdivision which nullified the original subdivision's restrictions. We concur with the trial court that Valle Vista Resurvey was not a new subdivision, but merely a resurvey and reconfiguration of the original subdivision. The property description of Valle Vista was the same as for Valle Vista Resurvey and within the direct chain of title. All of the subdivision property had a common grantor, and the covenants expressly applied to all lots in the subdivision.

■ When a covenant is in a prior instrument within a successor's direct chain of title conveying the land in fee simple, the successor has constructive notice of the covenant. Equity will enforce a covenant against all subsequent purchasers with notice. *Wolfner v. Miller*, 711 S.W.2d 580 (Mo.App.1986). We conclude that their point is without merit.

2. The trial court made the finding without reference to Section 6 which provided that William R. Gibson and Margaret E. Gibson, or their designated representative, were to serve on the committee until a majority of the property owners filed a written instrument naming other committee members. Although this suggests that the committee as formed continued to function, we defer to the trial court's finding. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

Certificate of Acknowledgment

■ The Schafers assert that the subdivision's restrictions were not enforceable against them because the restrictions did not contain a certificate of acknowledgment which satisfied § 442.210, RSMo 1978. Their complaint seems to be that because of the faulty certificate of acknowledgment they should not be deemed to "have notice constructive or otherwise." We disagree.

Although the restrictions' certificate of acknowledgment was faulty as originally filed in 1963,[3] the subdivision owners filed an amendment on March 27, 1963.[4] The amendment's certificate of acknowledgment did satisfy § 442.210.1.[5] The amendment made direct reference to the original restrictions: "[A] certain Declaration of Restrictions affecting all of said lots was recorded January 30, 1963 in Book 1611 at Page 575 under Recorder's Document No. 805792[.]'" Because, pursuant to § 442.-390, RSMo 1978, we deem the Schafers to have purchased with notice of the amendment, and because of the amendment's direct reference to the original restrictions, we conclude that they had sufficient notice of the wooden roof restriction.

Plaintiffs' Violations

The Schafers argue, we believe, that the trial court erred in enforcing the wooden roof restriction because of numerous violations of the restrictive covenants throughout the subdivision. The Schafers assert that the violations "constituted a waiver and abandonment of the enforcement of the restrictive covenants[.]"

The trial court found that one of the subdivision's other homeowners had covered a patio with a roof attached to his house and had used asphalt shingles. The Schafers established that one of the 18 plaintiff couples, the Bateses, after joining the lawsuit against the Schafers, had re-roofed their house with the same asphalt material used by the Schafers. The court found that an unspecified number of other houses in the subdivision had asphalt roofs.[6] The court found that one homeowner had erected a large dog house and did not use wooden shingles on its roof.

■ The Schafers correctly assert that a restrictive covenant may be waived and abandoned by a landowner's conscious acquiescence as evidenced by persistent violation of the provision. *Lake Saint Louis Community Association v. Kamper*, 503 S.W.2d 447 (Mo.App.1973). The violations, however, must be widespread to constitute waiver or abandonment. "[W]aiver or abandonment occurs only when violations of the restrictions are so general as to indicate an intention or purpose to abandon the plan or scheme intended to be maintained by the restrictions." *Dierberg v. Wills*, 700 S.W.2d 461, 466 (Mo.App.1985). We conclude that the violations on which the Schafers rely were limited and were, therefore, insufficient to establish either waiver or abandonment of the wooden roof restriction.

The Schafers are also correct that a plaintiff who selectively enforces a restric-

---

**3.** The certificate stated only, "Subscribed and sworn to before me this 28th day of January, 1963." Section 442.210.1, RSMo 1959, required, "The certificate of acknowledgment shall state the act of acknowledgment, and that the person making the same was personally known ... to the officer granting the certificate, to be the person whose name is subscribed to the instrument as a party thereto, or was proved to be such by at least two witnesses, whose names and places of residence shall be inserted in the certificate[.]"

**4.** The amendment did not refer to or alter the original wooden roof restriction.

**5.** It stated, "On this 27th day of March, 1963 before me, appeared W.R. Gibson to me person-

ally known, who being by me duly sworn, did say that he is the President of W.R. Gibson Development Co. a corporation, and that the seal affixed to the foregoing instrument is the corporate seal of said corporation and that said instrument was signed and sealed in behalf of said corporation by authority of its Board of Directors, and said W.R. Gibson acknowledged said instrument to be the free act and deed of said corporation."

**6.** Although the trial court did not make a specific finding about how many houses with asphalt shingle roofs were in the subdivision, the court heard evidence that there were four, including the Schafers' and the Bateses' houses.

tion, or violates the same restriction he seeks to enforce, should be deemed to have acquiesced and should not be granted the injunction he seeks. The Schafers certainly have a sound defense of acquiescence against a claim by the Bateses who violated the wooden roof restriction in the same way as the Schafers did. Seventeen other plaintiff couples, however, did not acquiesce and have a right to persist in their claim against the Schafers.[7] We do not know from the record before us how long the plaintiffs had permitted the other two house owners to violate the wooden roof restriction. The Schafers failed to establish sufficient details about the violations for us to conclude that the plaintiffs had acquiesced, so we conclude that the Schafers failed to meet their burden of showing acquiescence.

Changed Conditions

■ The Schafers argue that the trial court failed to weigh the harm done to the Schafers against the good which the plaintiffs derived from the restrictive covenants. The Schafers assert that because their asphalt roof was safer than a wooden one, the trial court should have found that the restriction had outlived its usefulness, especially considering the $4700 it would cost the Schafers to have their asphalt shingles replaced with wooden ones.

The Supreme Court of Missouri has instructed trial courts to consider the totality of the circumstances before imposing the defense of changed circumstances. *Eilers v. Alewel*, 393 S.W.2d 584 (Mo.1965). The trial court in this case did that. The trial court reasoned:

> I think personally GAF Timberline [the brand of shingles used by the Schafers] is every bit as good looking as wood. It's a shame they didn't have it, because at the time, in 1963, that color ["weathered wood" used by the Schafers] wasn't invented. But you have a restriction that hasn't been waived, that it would cause deterioration of the subdivision.

It's a fine subdivision and is still going strong, and it's a kind of a shame, but I will sustain the plaintiffs' petition for injunction.

> Because of the fact that the restrictions unequivocally state that it's got to be a wood roof.[8] I'm not sure that's the best thing. It's too bad the parties couldn't get together and work out something that you wouldn't have pink and blue and white [roofs] in [the subdivision]. But if it was GAF Timberline weathered wood, it would be every bit as good.

We do not discern any reason to overturn the court's conclusions. *Murphy v. Carron*, 536 S.W.2d 30 (Mo.1976).

### Burden of Proof

The trial court rejected the Schafers' contention that the plaintiffs had to establish the validity of the wooden roof restriction beyond a reasonable doubt. The Schafers rely on a commentator, 20 Am.Jur.2d *Covenants, Conditions, and Restrictions* § 325 (1965), which stated:

> The view has been taken [by the Georgia courts] that where it is sought to impose or enforce ... restrictions, a preponderance of evidence is not sufficient, but the existence and validity of the restrictions must be proved beyond a reasonable doubt, at least in the case of a restrictive covenant by implication.

■ The point is without merit. This is not a case involving a restrictive covenant by implication; moreover, we have not found a Missouri case holding that a plaintiff's burden is greater than a preponderance of the evidence in a case involving a restrictive covenant by implication.

### Discovery Dispute

The Schafers' final point concerns a pretrial discovery dispute. They complain that the trial court erred in overruling two motions concerning the dispute, a motion for sanctions against the plaintiffs and a mo-

---

**7.** We do not know what action has been taken to enjoin the Bateses' violation. That is a separate, independent matter outside the scope of this action.

**8.** The sentence and paragraph break occurred in the transcript, though we discern from the context that the court actually just paused at length before finishing his sentence.

tion in limine to prohibit the plaintiffs from submitting evidence related to the subject matter of the discovery requests. The Schafers filed the motions on the eve of trial because, they contended, the plaintiffs did not respond properly to their discovery requests.

The Schafers served interrogatories and requests for production of documents on the plaintiffs 25 days before trial was scheduled to begin. The Schafers contend that the lateness of their request occurred because of the trial court's negligence in communicating with them.

The problem began on August 20, 1990, when the Schafers appeared in court to answer a trial docket call, but the plaintiffs did not. The plaintiffs had filed suit on March 24, 1988, and the trial court had continued the trial twice, at the Schafers' request, before the August 20 docket call. The trial court dismissed the plaintiffs' suit without prejudice, and the Schafers left the courthouse. The plaintiffs appeared later and convinced the court to reinstate their action.

In its order of August 20, 1990, the court marked out its original order dismissing the case without prejudice and indicated, instead, that the matter was "continued to the March, 1991 Civil Term." The order stated that the court's clerk had mailed copies to attorneys for the plaintiffs and the Schafers.

The Schafers contend that their attorney never received a copy of the court's order. On December 4, 1990, the Schafers' attorney wrote the court in response to a November 30, 1990, docket call agenda. The letter stated:

Upon receipt of [the agenda] we contacted your clerk and were told this case was continued on the August 20, 1990 preemptory docket. I believe this is in error.

\* \* \* \* \* \*

Can you please look into the matter, or if time restraints prohibits you from doing so, please contact me as to how I can

be of assistance so that we can have this matter cleared up.

On February 5, 1991, the Schafers' attorney wrote the court again:

This is a follow up letter to the letter written to you ... on the 4th day of December, 1990[.] As that letter indicates, you dismissed the ... case for lack of prosecution on the 30th day of November, 1990.[9]

\* \* \* \* \* \*

I am proceeding on the basis that this case was dismissed without prejudice on November 30, 1990 and that the Plaintiffs in this action will have to re-file their action if they wish to continue to seek injunctive relief against the Schafers.

To try this case ... on March 18, 1991 would be extremely prejudicial to the particular Defendants at this time. I would appreciate having some response to both this letter as well as [the November 30] letter.

At the bottom of the letter was a handwritten note: "2/7 Call Kathy—Case not dismissed. Judge Gant will call atty. Stays on docket." None of the letters indicate that the Schafers sent copies to the plaintiffs' counsel.

On March 13, 1991, the Schafers requested a third continuance on the ground that they had done no discovery in preparation for the trial set for March 18 because they believed their case was truly dismissed and the court had not informed them otherwise. The trial court granted the continuance and rescheduled the trial for May 6, 1991.[10]

The Schafers waited until April 11 to serve their discovery on the plaintiffs. They did not request the court to shorten the time for the plaintiffs to respond as permitted by Rules 57.01(a) (interrogatories) and 58.01(b) (request for production). The plaintiffs did not respond within the 20 days required by the rules. On May 2, 1991, the day after the plaintiffs' answers were due, the Schafers' attorney wrote the plaintiffs' attorney requesting the answers

---

**9.** The correct date was August 20, 1990.

**10.** The trial actually began on May 7, 1991.

and sent it by facsimile machine (fax). The plaintiffs' attorney answered by fax at 4:50 P.M. on May 3, 1991: "Evidently, you did not receive my copy of objections to your interrogatories and motions for production. If you have not received them at this time, please advise me and I shall fax them to you." The Schafers' attorney did request them, and the plaintiffs' attorney faxed them at 5:20 P.M. on May 3.

The plaintiffs objected to virtually every request. The Schafers asked for sanctions pursuant to Rule 61.01. We affirm the trial court's denial of the Schafers' motions.

■■■ A trial court has broad discretion in administering discovery rules. We should reverse the trial court's rulings in such matters only when we find an abuse of discretion. *State ex rel. Metropolitan Transportation Services, Inc. v. Meyers,* 800 S.W.2d 474, 476 (Mo.App.1990). A trial court abuses its discretion when its ruling "is clearly against the logic of the circumstances then before the court and so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.; State ex rel. Webster v. Lehndorff Geneva, Inc.,* 744 S.W.2d 801, 804 (Mo. banc 1988).

■■■ The trial court did not abuse its discretion in this case. The Schafers waited until almost the very last minute to begin discovery in a case which had been pending for three years. Without evidence to the contrary, we presume that the trial court mailed its order of August 20, 1990, reinstating the case and setting it for the March 1991 docket to the Schafers' attorney as the document indicates. Even if the attorney did not receive that order, he acknowledges receiving notice as early as November 30, 1990, that the case had been reinstated. The Schafers' attorney wrote letters of inquiry to the court, but the record does not indicate he diligently followed-up. The attorney did not send copies of the letters to opposing counsel or make any inquiry of him although surely he realized that opposing counsel could clear up the confusion for him. Even after determining that indeed a trial would occur and

after obtaining a third continuance, the Schafers waited almost 30 more days before initiating discovery—only 25 days before trial—without asking the court to shorten the time for the plaintiffs' answers. When the plaintiffs did not answer on time or to the Schafers' satisfaction, they did not ask the court to compel the plaintiffs' answers. In light of these circumstances, we do not conclude that the trial court abused its discretion in overruling the Schafers' motions.

### Conclusion

For these reasons, we discern no basis for reversing the judgment of the trial court. We affirm.

All concur.