**Joe MACKEY and Judy Mackey, Plaintiffs–Respondents,**

v.

**Jeff GRIGGS, Defendant–Appellant.**

No. 23998.

Missouri Court of Appeals, Southern District, Division Two.

Dec. 7, 2001.

Bryan O. Wade, Ginger K. Gooch, Husch & Eppenberger, LLC, Springfield, MO, for appellant.

Kerry D. Douglas, Douglas, Lynch, Haun & Kirksey, P.C., Bolivar, MO, for respondents.

NANCY STEFFEN RAHMEYER, Judge.

Jeff Griggs ("Appellant") appeals from a judgment against him for a violation of a restrictive covenant for the use of a lot in the Prairie Heights Mini Estates subdivision. Joe and Judy Mackey ("Respondents"), who have owned the lot next to the lot in question since 1984, brought a suit for nuisance and a violation of a restrictive covenant. Respondents abandoned the claim of nuisance as no evidence was adduced concerning that count. The trial court issued an order permanently enjoining Appellant from using Lot 9 as a parking lot. Appellant appeals from that order. We reverse and remand.

In 1974, a ten-lot subdivision named Prairie Heights Mini Estates was platted by Mr. and Mrs. Stuart Gardner. The subdivision is L-shaped; at the easternmost edge of the inverted L-shaped subdivision and adjoining commercially-zoned property is Lot 9. All of the property east of the subdivision is commercial; all of the property north and south is pastureland or wooded area. Four of the lots are fenced and have been used for pasturing beef cattle. Only two of the lots have residences on them. Arvel Gardner ("Gardner"), the brother of Stuart Gardner, purchased all ten lots. There were four restrictive covenants incorporated into the original subdivision plat, but only one covenant is at issue in this case.

Until the sale of Lot 9 in 1977, it was an open field. At that time the owner bought the lot for use as a truck thoroughfare and a parking lot to his adjoining business. Respondents purchased the lot directly west of Lot 9 in 1984 and have made it their residence since that time. During the entire time the Respondents owned their property the property adjoining Lot 9 to the east was used by commercial establishments. At least as early as 1994, Lot 9 was used by Appellant for employee parking for his t-shirt manufacturing facility. Appellant then purchased the lot in 1995. In 1997, Appellant changed his t-shirt business to a restaurant and bar but continued to use Lot 9 for parking. The present dispute ensued when he attempted to improve the parking lot by extending the chat toward the Respondents' property and by adding lights.

Respondents complained that the new restaurant business caused more cars to be parked on the lot during the day and

evening hours and that the cars parked closer to Respondents' property line than when the t-shirt business was there. Respondents admitted they were not bothered by the vapor lights or the noise from the improved parking lot. Additional facts shall be recounted as necessary during the analysis and discussion of Appellant's points on appeal.

Appellant challenges the decision of the trial court for four reasons: 1) the express language of the covenant only prohibits the type of structure to be erected on Lot 9 and not the use of that lot as a parking lot; 2) the Respondents are estopped from enforcing the restrictions under the doctrine of laches; 3) the covenant has been waived or abandoned because of persistent, widespread violations of the restriction; and 4) the Respondents are estopped from enforcing the restriction under the doctrine of unclean hands because they have violated the restrictions themselves.

 "The rules governing construction of restrictive covenants on realty are generally the same as those applicable to any covenant or contract." *Stolba v. Vesci*, 909 S.W.2d 706, 708 (Mo.App. S.D. 1995); *see also Hoag v. McBride & Son Investment Co., Inc.*, 967 S.W.2d 157, 169 (Mo.App. E.D.1998). This court reviews contract construction *de novo* as a question of law. *Wildflower Community Association, Inc. v. Rinderknecht*, 25 S.W.3d 530, 534 (Mo.App. W.D.2000). It is well established that our courts interpret restrictive covenants so as to give effect to the intent expressed by the plain language of the covenant. *Blevins v. Barry–Lawrence County Association For Retarded Citizens*, 707 S.W.2d 407, 408 (Mo. banc 1986); *Parkton Association v. Armstrong*, 878 S.W.2d 50, 53 (Mo.App. E.D.1994); *Blackburn v. Richardson*, 849 S.W.2d 281, 286–87 (Mo.App. S.D.1993).

 "Presumptively, the parties' intent is expressed by the natural and ordinary meaning of the words used in the contract." *Dwyer v. Unit Power, Inc.*, 965 S.W.2d 301, 307 (Mo.App. E.D.1998). Ambiguity in the contract terms exists if the words are susceptible to more than one meaning. *Id.* Using the plain meaning of the words as understood by a reasonable person, we look to the context of the entire agreement to ascertain whether the language is susceptible to more than one construction. *Stolba*, 909 S.W.2d at 708. If the contract is unambiguous and complete, parol evidence cannot be used to vary or contradict the terms of the covenant. *Parkton*, 878 S.W.2d at 54.

 Additionally, we note that restrictive covenants are to be strictly construed as the law favors untrammeled use of real estate. *Stolba*, 909 S.W.2d at 708. Because restrictive covenants are not favorites of the law, when interpreting such covenant, we shall give effect to the intent of the parties if it is expressed in the plain language of the covenant; however, when there is ambiguity or substantial doubt as to the meaning of the terms, the covenants will be read narrowly in favor of free use of the property. *Blevins*, 707 S.W.2d at 408. If the restrictive covenant is unambiguous, then it is not open to judicial construction. *Blackburn*, 849 S.W.2d at 286. Valid restrictions cannot be disregarded by the courts. *Dierberg v. Wills*, 700 S.W.2d 461, 466 (Mo.App. E.D.1985). Even though we consider these well established principles, each case must be decided upon its particular facts. *Id.*

 In Point I Appellant contends that the restrictive covenant at issue was merely intended to keep commercial buildings from being erected on the lots. The covenant that is the subject of the current dispute reads as follows:

THESE LOTS ARE RESTRICTED TO RESIDENTIAL USES ONLY AND NO COMMERCIAL ESTABLISHMENTS ARE ALLOWED.

Appellant contends that under traditional rules of statutory construction, each word, clause, sentence and section of a statute should be given meaning [1] and he points out that this covenant contains two sections which must be read in harmony as restricting commercial establishments. He argues that the court erred in failing to find that the restrictions relate only to the type of structure to be erected on the lots. As support for that argument Appellant contends that since the original sale of the property, the covenant has always been interpreted as restricting the type of structure and Lot 9 has been used as a parking lot. Appellant provided the testimony of the original owner of all the lots of the subdivision, Gardner, whose opinion was that a parking lot does not violate the covenant.

Respondents counter that Gardner's testimony has no probative value as to the intent of the parties to the covenant. Respondents further contend that we must assume that the covenant is clear and unambiguous. They say the language, "These lots are restricted to residential uses only," means what it says and restricts the use to "residential uses only." They define residential use as a "place where someone's home is." Respondents argue that "no commercial establishments are allowed" is simply surplusage because it neither limits nor modifies the wording of the first clause.

Both parties directed this court to the same cases as support for each proposition. In *Blevins v. Barry–Lawrence County Association For Retarded Citizens*, 707 S.W.2d 407 (Mo. banc 1986), the restrictive covenant at issue stated:

The aforesaid real property shall be used for residential purposes only. No buildings shall be erected, altered, placed or permitted to remain on said real property other than single or double family dwellings not to exceed two and one-half stories in height and private garages for not more than two cars. No detached structures shall be permitted.

*Id.* The Missouri Supreme Court stated the initial issue as whether the group home for eight unrelated persons and two house parents violates the restriction against any use other than for residential purposes. *Id.* at 408. In doing so, the court treated the restrictive covenant as both a use and structural restriction. The court determined that the group home qualified as a residential "use" as opposed to a commercial "use." *Id.* at 408. The court further found that the use of the lot as a group home did not violate the second clause regarding the erecting of any buildings because, by its plain terms, the restriction applied to structures and not to the use of the property. *Id.* at 410–11.

The restrictive covenant at issue in *Stolba v. Vesci*, 909 S.W.2d 706 (Mo.App. S.D. 1995) was:

All lot owners are subject to the following conditions: only private homes of standard construction and a minimum foundation space of 600 square feet are to be built. The homes are to be finished outside so as not to detract from other homes. No business allowed.

*Id.* at 707. In *Stolba* the question was whether the building of a condominium violated the restrictive covenant. In finding that it did, this court treated the re-

---

**1.** *See State v. Wiles,* 26 S.W.3d 436, 440 (Mo. App. S.D.2000).

strictive covenant as a structural restriction. *Id.* at 708–10.

Likewise, in *Vinyard v. St. Louis County*, 399 S.W.2d 99 (Mo.1966) the court treated the following covenant as a structural restriction and not as a use restriction:

> All lots shall be known and described as residential lots. No structure shall be erected on any residential building lot other than one detached single family dwelling which shall not exceed two stories in height.... No residence shall be used directly or indirectly for business of any character or for any purpose other than that of an exclusive private residence for one family.

*Id.* at 105. Even though Respondents correctly note that the *Vinyard* case involved a roadway that provided access to an apartment, and was not a supplemental use to an adjoining commercial property, our supreme court stated that the above covenant restricted the type of structure to be erected and the use of the structure erected thereon. *Id.* at 106.

A restrictive covenant that provided that the parties "agree not to erect ... any building intended for any purpose except a one family private residence containing a minimum of 2,000 square feet exclusive of garage" was held to be a covenant restricting the type of building and not a restriction on the use of the land. *Dierberg v. Wills*, 700 S.W.2d 461, 468 (Mo.App. E.D. 1985).

Appellant suggests that the covenant at issue in *City of Ste. Genevieve v. Ste. Genevieve Ready Mix*, 765 S.W.2d 361 (Mo.App. E.D.1989), is comparable to the covenant at issue in this case. A portion of that covenant reads:

> The above described [lot] being subject to restriction on the use of said parcel to residential purposes only.

*Id.* at 366. The court, viewing the covenant with the remaining covenants regarding the exclusion of trailer courts and buildings of low-roof type, found this covenant to be a restriction on type of structure and not a prohibition on the use of the land as a street. *Id.* Respondents counter that the issue in that case was whether the land in question could be used for a public street, not a parking lot ancillary to the operation of a restaurant adjoining the lot.

However inartfully drafted, a close examination and comparison of the covenant at issue and similar covenants persuade us that there are two different clauses contained in the covenant that both restrict the use of the land and are not simply structural restrictions. We next must determine if the proposed use as a parking lot by Appellant violates either a restriction on residential use or use as a commercial establishment. We determine that it does. The testimony of Gardner, notwithstanding, the parking lot is for a commercial use as an adjunct to the restaurant/bar on the adjoining lot. There is no contention that there is any residential purpose or use to the parking lot. Point I is denied.

Appellant's second point on appeal is that the trial court erred in finding that the Respondents are not barred from enforcing any rights under the restrictive covenants through the doctrine of laches. As a result of Lot 9 being used as a parking lot for twenty years, Appellant argues that he was materially prejudiced by expending time and money improving Lot 9 and opening a commercial business on an adjoining lot.

Laches "has been defined as the neglect, for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what should have been done." *Selsor v. Shelby*, 401 S.W.2d 169, 171 (Mo.App.1966). Delay

alone is insufficient to establish laches; only delay resulting in a disadvantage to the other party justifies application of the equitable doctrine of laches. *Id.* A party seeking to invoke the equitable doctrine of laches must establish that "a party with knowledge of the facts giving rise to his rights delays assertion of them for an excessive time and the other party suffers legal detriment therefrom." *Port Perry Marketing Corp. v. Jenneman,* 982 S.W.2d 789, 792 (Mo.App. E.D.1998). When considering the doctrine of laches, the court should consider the equities and the conduct of all the parties. *Blackburn,* 849 S.W.2d at 289. Equity does not encourage laches except to prevent injustice. *Higgins v. McElwee,* 680 S.W.2d 335, 341 (Mo. App. E.D.1984). Whether laches is applicable is a question of fact to be determined from all the evidence. *Estate of Holtmeyer v. Piontek,* 913 S.W.2d 352, 356 (Mo. App. E.D.1996).

Appellant began leasing Lot 9 in 1994. There was evidence from which the trial court could have found that at that time the intrusion on Respondents' use of their property was minimal. Although Respondents did not complain about the earlier use of Lot 9 as a parking lot, the use substantially changed with the opening of the restaurant. Respondents claim while the lot was for the t-shirt business the parking was at the far end of the lot and no more than thirty cars were parked on the commercial lot and Lot 9, but when the business changed that number went up to sixty cars on the lot. The trial court heard the evidence and determined how the Appellant used the parking lot. We shall defer to the trial court's determination of the credibility of the witnesses. *Rone v. Reeves,* 20 S.W.3d 526, 530 (Mo.App. S.D. 2000).

■ Even if we accept Appellant's argument that he has been prejudiced in expending money to open the restaurant and improving Lot 9, substantial evidence exists that Respondents timely complained about the expansion of the parking lot. When Appellant originally attempted to extend the parking area of Lot 9, Respondents stopped the contractor by explaining to him that the lot was restricted. A different contractor was hired to do the work. We find that there is substantial evidence that Respondents did not delay in asserting their claim for an unreasonable and unexplained length of time. Point II is denied.

Appellant claims in his third point that the trial court erred in holding that the second restriction has not been waived or abandoned because the restriction was abandoned by persistent widespread violations of the restriction in that only two of the ten lots have residential homes, three of the lots are used for the grazing of beef cattle and one has been a parking lot since 1977. Appellant contends sixty percent of the lots are not complying with the Respondents' interpretation of the restrictive covenant. Appellant's Point III has merit.

■ A restrictive covenant may be waived and abandoned by a conscious acquiescence as evidenced by persistent violations of the covenant. *Connelly v. Schafer,* 837 S.W.2d 344, 347 (Mo.App. W.D. 1992). It can also be waived by failure to object to violations of the restriction. *Stolba,* 909 S.W.2d. at 710. The violation must be widespread to constitute waiver or abandonment and it must be so general as to indicate an intention or purpose to abandon the scheme intended to be maintained by the restriction. *Connelly,* 837 S.W.2d at 347. Because waiver and abandonment is an equitable defense, few rules can be generally applied and each case is decided upon its own facts. *Gibbs v. Cass,* 431 S.W.2d 662, 668 (Mo.App.1968).

■ Appellant argues that it is the Respondents who claim that the covenant is a

"use" covenant and not a structure covenant; therefore, the use of pasturing beef cattle and the use as a parking lot constitute a waiver. We agree. As noted above, we find that both clauses of the restrictive covenant are "use" covenants. The long-continued, unbroken use of Lot 9 as a parking lot was known by Respondents and, as such, constituted a waiver and abandonment. *See Ashelford v. Baltrusaitis,* 600 S.W.2d 581, 587 (Mo.App. W.D. 1980). The evidence clearly illustrates that the majority of the subdivision is used for purposes other than residential in that there are only two homes on two lots. The remainder of the lots are used for farming operations and for the parking lot. The area surrounding the subdivision is used for commercial purpose (sale of farm implements, sale of seed and penning of commercial beef cattle) and the other areas are pastureland. Because the law favors the free and untrammeled use of real property, and because restrictions in conveyances on the fee are regarded unfavorably and strictly construed,[2] we find the widespread non-residential use in the subdivision constitutes a waiver and abandonment of the restrictive covenant. Point III is granted.

Because of our finding on Point III, we decline to address Appellant's Point IV. The judgment and decree of the trial court is reversed and the cause is remanded to the circuit court to enter a judgment denying the injunction as prayed for by the Respondents and decreeing that Appellant is entitled to use Lot 9 for a parking area.

PREWITT, J., and PARRISH, J., concur.

---

2. *See Gibbs,* 431 S.W.2d at 668.