

# In the Missouri Court of Appeals
# Eastern District
## DIVISION ONE

| | | |
|---|---|---|
| SHARON DASH, BILL BLACKSHER, and CYNTHIA SOWELL, AS TRUSTEES of RIVERWOOD ESTATES HOMEOWNERS ASSOCIATION, | ) ) ) ) ) | No. ED110838 |
| Appellants, | ) ) | Appeal from the Circuit Court of St. Louis County |
| vs. | ) ) | Case No: 20SL-CC04094 |
| ADA TAYLOR, | ) ) | Honorable Joseph L. Walsh III |
| Respondent. | ) ) | FILED:  May 9, 2023 |

### Introduction

Sharon Dash, Bill Blacksher, and Cynthia Sowell, as Trustees of Riverwood Estates Homeowners Association (collectively Trustees) appeal from the Findings of Fact, Conclusions of Law, Order and Judgment entered in favor of Ada Taylor (Homeowner) on the Trustees' Petition for Permanent Injunction, Declaratory Relief, Damages and Legal Expense. We affirm in part and reverse in part.

### Factual and Procedural Background

In 2015, Homeowner purchased the residential property located at 49 Beaujolais Drive, St. Louis, Missouri 63031. The property is located within the Riverwood Estates Subdivision (the Subdivision) and is subject to the Subdivision's Declaration of Residential Covenants and Restrictions (the Declarations). The Declarations provide that homeowners within the Subdivision are governed by the Riverwood Estates Homeowners Association (the Association).

The prior owner of the home at 49 Beaujolais Drive stored their trash cans in a structure built in the driveway, pictures of which were introduced at trial. After Homeowner purchased her home, she removed the prior owner's trash storage station and began storing her trash cans in the driveway. A former trustee complained to Homeowner about the placement of the trash cans, and thereafter the Association sent an email communication stating:

> Instead of sending out an official letter I will just contact you by email. I have had comments on your trash cans stored in the open portion of your lot. They are to be stored out of sight. I believe the previous owner stored them behind the storage station on your driveway. If you have any questions please contact the trustees. If you have not received the indentures and rules for RWE, I can send you the documents.

In response to these complaints, Homeowner constructed an area behind her home in which to store her trash cans (the trash enclosure). The original trash enclosure functioned without complaints from neighbors or the Association for approximately 4-5 years. Eventually, however, Homeowner noticed racoons were climbing the walls of the trash enclosure, getting into the trash cans, and spreading garbage throughout the yard and neighborhood. To limit the access to the trash cans, Homeowner decided to add a top to the trash enclosure. Photographic evidence presented at trial indicated other homeowners in the subdivision had also erected structures with walls and tops.

In spring of 2020, the Association began sending letters to Homeowner stating the trash enclosure was an "outbuilding (shed) that violated the Declarations." On May 18, 2020, counsel for the Association sent Homeowner a letter stating the trash enclosure violated Article VI of the Declarations, which prohibits "outbuildings, detached garages, sheds, barns, shacks or structures" and it had to be completely removed. The Declarations contain the following pertinent "Use Restrictions" in Section VI:

> H.  No outbuildings, detached garages, sheds, barns, shacks or structures whether of a temporary character or not other than the single family residence constructed

on each lot shall be constructed or maintained on any lot or in any portion of the subdivision.

A bench trial was held on March 31, 2022. During cross-examination, Trustee Dash was asked but was unable to define what was or was not prohibited under the Declarations; however, she eventually admitted the Declarations prohibited only unattached buildings, and that Homeowner's trash enclosure was attached. Trustee Dash further testified as to her concern about the top or "roof" that Homeowner added to the trash enclosure to keep out racoons and other animals. The top was thereafter removed by Homeowner from the trash enclosure.

During cross-examination, Homeowner admitted she owed the Association assessments for the years 2020, 2021, and 2022.

On June 6, 2022, the trial court entered its Judgment finding Homeowner's trash enclosure cans did not violate the Association's Declarations. The trial court further found the Association had allowed similar structures to be maintained in the neighborhood, and therefore had waived the right to selectively enforce the Declarations against Homeowner. On appeal, the Association seeks reversal of the Judgment denying injunctive and declaratory relief, as well as an award of legal fees related to this lawsuit and past assessments and interest.[1]

Standard of Review

Our review of an action in equity, such as an action seeking an injunction, is governed by Murphy v. Carron, 536 S.W.2d 30 (Mo. banc 1976). Gray v. White, 26 S.W.3d 806, 814–15 (Mo. App. E.D. 1999). Accordingly, we will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. Id. at 815. In reviewing a court-tried case, we review the evidence in a manner favorable to the judgment, disregarding contradictory evidence, and we

---

[1] Trustees' motion for attorneys' fees, which was taken with the case, is denied.

defer to the trial court's credibility determinations. Apted-Hulling Inc. v. L & S Properties, Ltd., 234 S.W.3d 486, 489 (Mo. App. E.D. 2007); Day v. Hupp, 528 S.W.3d 400, 412 (Mo. App. E.D. 2017). The interpretation of a restrictive covenant is a question of law and as such is to be reviewed *de novo* on appeal. Mackey v. Griggs, 61 S.W.3d 312, 315 (Mo. App. S.D. 2001).

Trash Enclosure

In Point I, Trustees argue the trial court erred by entering judgment in favor of Homeowner because the trash enclosure was expressly prohibited by the Declarations, the Declarations were not ambiguous, and the Trustees did not waive their objection to the offending structure. We disagree.

"Restrictive covenants are not favorites of Missouri law." Mullin v. Silvercreek Condominium Owner's Ass'n, Inc., 195 S.W.3d 484, 490 (Mo. App. S.D. 2006) (citing Blevins v. Barry-Lawrence County Ass'n, 707 S.W.2d 407, 408 (Mo. banc 1986). "Restrictive covenants on realty are strictly construed as the law favors untrammeled use of real estate." Hammarstrom v. Samsel, 114 S.W.3d 889, 890 (Mo. App. S.D. 2003) (citing Mackey, 61 S.W.3d at 315). "The burden of proving that the use being made of real estate is in violation of restrictions is on the party seeking to enforce the restrictions." Id. at 890-91 (citing Daniel v. Galloway, 861 S.W.2d 759, 761 (Mo. App. S.D. 1993)). "Restrictive covenants will not be extended by implication to include anything not clearly expressed in them, and if there is substantial doubt of their meaning, such doubt should be resolved in favor of the free use of the property." Shepherd v. State ex rel. State Highway Comm'n, 427 S.W.2d 382, 387 (Mo. 1968) (quoting Barnes v. Anchor Temple Ass'n, 369 S.W.2d 893, 898 (Mo. App. St.L. 1963)).

Here, interpreting the Declarations in light of the public policy and the law that favors the free and unrestricted use of property, the trial court was correct in finding that Homeowner's trash

enclosure was permitted under the Declarations. Article VI.H. of the Declarations states in pertinent part:

> No outbuildings, detached garages, sheds, barns, shacks or structures whether of a temporary character or not other than the single family residence constructed on each lot shall be constructed or maintained on any lot or in any portion of the subdivision.

The examples of prohibited structures listed in the Declarations are ones not attached to the main structure. At trial, there was discussion over whether Homeowner's trash enclosure fit the definition of an "outbuilding" or "shed" because it was attached to her house and therefore not prohibited under the Declarations:[2]

> Q: What is the definition of a shed?
> A: My definition of a shed would be a structure that has a roof and a cover and is used to house something. That would be my definition.
> Q: A roof—a structure with a roof or a cover used to house something?
> A: That was attached—that's attached to a building.
> Q: That's attached to a building?
> A: (Nods head.)
> Q: Okay. So let's take a look, then, at your Exhibit 8. These are the covenants, and we are on page 14 of them. It was provision H. It says, No outbuildings, detached garages, sheds, barns, shacks, or structures, whether of temporary character or not, other than the single-family resident constructed on each lot. Where does it say anything about being attached?
> A: Well, I'm just saying that when we went – we didn't— I didn't know if it was attached.
> Q: I want to get your definition. You said a shed has to be attached. All of these things here in the covenants describe something that is not attached: a barn, a shed, an outbuilding, a detached garage. You'd agree with me?
> A: I would agree with that.

---

[2] Trustees have cited a number of decisions in which Missouri courts purportedly interpret the word "shed." They are either inapposite or support Homeowner's position. In Simcox v. Obertz, 791 S.W.2d 440 (Mo. App. E.D. 1990), the court noted the dictionary definition of "shed" was an "outbuilding" and as discussed above, an "outbuilding" is a detached structure. Id. at 442. Moreover, the court found the structure was not a "shed" because it was not "slight" in size, as defined in the dictionary. Id. at 442-43. In Fox v. Smidt, 869 S.W.2d 904 (Mo. App. W.D. 1994), the issue was not the definition of the word "shed" but instead whether the structure being erected was for "residential" or "commercial" purposes. Id. at 905-06. The court concluded the language in the restrictive covenant was directed to the building's use for residential purposes, and not merely its exterior appearance. Id. at 906. Finally, in Brentmoor Place Residents Ass'n v. Warren, 816 S.W.2d 7 (Mo. App. E.D. 1991), the decision turned on whether a "legally appointed Board of Trustees" had met to consider the owner's application to erect a "fence, shed, and satellite dish" and not on the definition of a "shed." Id. at 9.

Based on this exchange, Trustee Dash conceded an outbuilding or shed is not attached and the trash enclosure at issue was attached. Therefore, based on Trustee Dash's own admission, and as used in subsection H, Homeowner's trash enclosure is permitted under the Declarations. Trustee Dash testified her definition of a "shed" was a structure with a roof. In the present case, however, the trash enclosure, with or without a roof, was attached to Homeowner's house, and therefore not prohibited by subsection H. Regardless, upon hearing testimony about the roof at trial, Homeowner promptly removed the roof and replaced it with wire to keep out the raccoons.

Additionally, even if, as the trial court found, the Declarations were ambiguous as to whether this trash enclosure was prohibited, "[i]t is a well-established rule that restrictive covenants are not favorites of the law, and when interpreting such covenants, courts should give effect to the intent of the parties as expressed in the plain language of the covenant; but, when there is any ambiguity or substantial doubt as to the meaning, restrictive covenants will be read narrowly in favor of the free use of property." Blevins, 707 S.W.2d at 408. Strictly construing Article VI.H. of the Declarations in favor of Homeowner's free use of property and resolving any doubts in her favor, we find the language does not clearly indicate the trash enclosure was prohibited, and this Court declines Trustees' invitation to extend the meaning of the language by implication to include any such prohibition.

Finally, Trustees waived their right to object to the trash enclosure. The trial court stated "the evidence established that other homeowners in the Subdivision have erected structures that have walls and tops, such as Gazebos and tent structures. Such acquiescence constitutes a waiver." "A restrictive covenant . . . may be waived and abandoned by a conscious acquiescence as evidenced by persistent violations of the covenant." Mackey, 61 S.W.3d at 318. "It can also be waived by failure to object to violations of the restriction." Id. The burden of proving waiver of a restrictive covenant in a subdivision's indentures rests with the party asserting waiver. Blue Ridge

Bank & Tr. Co. v. Trosen, 309 S.W.3d 812, 816–17 (Mo. App. W.D. 2010). But, "[b]ecause waiver and abandonment is an equitable defense, few rules can be generally applied and each case is decided upon its own facts." Id. (quoting Mackey, 61 S.W.3d at 318).

In the instant case, there was substantial evidence that other homeowners had constructed similar structures—the trash structure erected and maintained by the prior owner of the home, a permanent tent, a gazebo, and a pool house—without complaint. Moreover, the failure of Trustees to act for five years after essentially directing Homeowner to construct the trash enclosure constitutes a waiver of the ability to demand it be torn down now. See Blue Ridge Bank, 309 S.W.3d at 817; Lake St. Louis Cmty. Ass'n v. Kamper, 503 S.W.2d 447, 449 (Mo. App. St.L. 1973); Mackey, 61 S.W.3d at 318-19.[3] Affording the trial court the proper level of deference, the evidence presented at trial sufficiently supports the trial court's finding of waiver, and that finding is not against the weight of the evidence. Point I is denied.

## Association Approval

In Point II, Trustees argue the trial court erred by entering judgment in favor of Homeowner because the evidence at trial demonstrated that Homeowner violated the Declarations by failing to request Trustee approval prior to building the trash enclosure.

---

[3] We note that even if, as Trustees contend, Homeowner's affirmative defense was technically insufficient, Rule 55.33 allows an unpleaded issue to be tried by consent of the parties. Rule 55.33 permits parties to raise unpleaded issues at trial if both parties either expressly or impliedly consent to trial of the unpleaded issue. "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Rule 55.33(b). "In effect, the implied consent rule provides that if evidence applying to a new issue is admitted, without a timely and specific objection, and the evidence is not relevant to issues already present, Rule 55.33(b) treats the new issue as having been raised in the pleadings." Fannie Mae v. Univ. Vill. Apartments, 479 S.W.3d 706, 716 (Mo. App. E.D. 2015). Importantly, our courts have held that "[t]he implied consent rule only applies when the evidence introduced at trial bears on a new issue and is not pertinent to issues already in the case." Heritage Roofing, LLC v. Fischer, 164 S.W.3d 128, 132 (Mo. App. E.D. 2005). Here, the evidence of other homeowners' structures was only relevant to the issue of whether Trustees had permitted others to erect and maintain similar structures. As such, even if not expressly pleaded, the waiver issue was tried by the implied consent of the parties.

7

Assuming *arguendo* that Homeowner required permission from Trustees before erecting the trash enclosure they directed her to remove from the driveway, Trustees never once complained, questioned, or commented on Homeowner's trash enclosure for five years, until another neighbor wanted to build a tool shed. Therefore, the trash enclosure was effectively "approved." Homeowner further testified that had she been asked to "modify" the trash enclosure in any way, she would have complied. However, she was never asked to do anything until 2020 when she was directed to tear down the entire structure. For all the reasons set forth above, the record shows Trustees waived their right to now object to the trash enclosure and cannot now rely upon the issue of approval for reversing the trial court's Judgment. Point II is denied.

Delinquent Assessments

In Point III, Trustees argue the trial court erred by entering judgment in favor of Homeowner because Homeowner violated the Declarations by failing to pay assessments in the amount of $250 per year for the years 2020, 2021, and 2022, as required. Further, Homeowner admitted at trial she was responsible for the unpaid assessments for those years. We agree.

Under the "Assessment Increases," Homeowner owes assessments in the amount of $250 per year for the years 2020, 2021, and 2022. At trial, testimony was elicited that Homeowner did not pay her assessments. In fact, Homeowner admitted at trial that she owed $750 for delinquent assessments for those years. Under Missouri law, Homeowner's affirmative representations constitute binding judicial admissions. A judicial admission is "an act done in the course of judicial proceedings that concedes for the purpose of litigation that a certain proposition is true." Moore Automotive Group, Inc. v. Goffstein, 301 S.W.3d 49, 54 (Mo. banc 2009). "Judicial admissions are generally conclusive against the party making them." Id.

Additionally, Section V of the Declarations, titled "Assessments," provides "(i)f any assessment is not paid within thirty (30) days after the delinquency date, such assessment shall

8

bear interest from the date of delinquency at the rate of ten percent (10%) per annum..." Trustee Dash testified that Homeowner owed $75 in interest because of the unpaid assessments. Based on the foregoing, the trial court's ruling was not supported by the substantial evidence presented at trial. Point III is granted.

## Exhibit E

In Point IV, Trustees argue the trial court abused its discretion in allowing Exhibit E into evidence because Homeowner failed to lay a sufficient foundation for the admission of the nine photographs therein contained. Trustees argue that no witness testified as to the photographs being faithful representations of what they purported to portray. We disagree.

"A trial court enjoys considerable discretion in the admission or exclusion of evidence, and, absent clear abuse of discretion, its action will not be grounds for reversal." Cox v. Kan. City Chiefs Football Club, 473 S.W.3d 107, 114 (Mo. banc 2015). An abuse of discretion in deciding to admit evidence "occurs when the circuit court's ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." State v. Tisius, 362 S.W.3d 398, 407 (Mo. banc 2012). The foundational requirements for admission of a photograph are as follows:

> A photograph cannot be admitted unless there is evidence authenticating or identifying it. To establish this foundation, "one offering a photograph in evidence must show by extrinsic evidence that the photograph is an accurate and faithful representation of the place, person or subject it purports to portray." State ex rel. Highway Comm'n v. Cone, 338 S.W.2d 22, 27 (Mo. 1960). This showing can be made with testimony from "any witness who is familiar with the scene, object or person portrayed and is competent to speak from personal observation" that the photograph shows what it purports to portray. Id.

Kappel v. Prater, 599 S.W.3d 189, 193 (Mo. banc 2020).

At trial, there was no objection to the photographs for "lack of foundation" until after Trustee Dash had testified on cross-examination as to the photographs in Exhibit E. After counsel

9

for Trustees objected, counsel for Homeowner went back to lay the foundation for the photographs, and Trustee Dash testified that every house depicted in the photographs was from her neighborhood. The photographs were then admitted by the trial court.

Here, the photographs admitted as Exhibit E were authenticated by persons who testified, based on their personal observations, that each photograph fairly and accurately depicted the person or object shown. Therefore, taking as given that the photographs fairly and accurately portray what they are offered to show (*i.e.*, photographs of other homes in the neighborhood), we cannot say the trial court abused its discretion in admitting those photographs. Point IV is denied.

<u>Conclusion</u>

We affirm the Judgment in all respects except as to $750 for delinquent assessments plus $75 interest, which are owed to the Association by Homeowner.

_Sherri B. Sullivan_
_____
SHERRI B. SULLIVAN, J.

Angela T. Quigless, P.J., and
Robert M. Clayton III, J., concur.

10