Donald C. and Eileen G.
FOX, Respondents,

v.

Mike and Kandi SMIDT, Appellants.

No. WD 48325.

Missouri Court of Appeals,
Western District.

Feb. 8, 1994.

Robert E. Harris, Warrensburg, for appellants.

John Henry Edmiston, Warrensburg, for respondents.

Before TURNAGE, P.J., and BRECKENRIDGE and HANNA, JJ.

HANNA, Judge.

The defendants, Mike and Kandi Smidt, purchased lots 12 and 13 in Green Acres, located approximately one mile south of War-

rensburg in Johnson County, Missouri. There are about 64 houses in the subdivision. The purchase of the lots was subject to a recorded restrictive covenant agreement. The defendants live in a residence on lot 12. This lawsuit commenced when they started construction of a building on lot 13. The defendants had the concrete foundation of the structure poured. The structure was to be 32 feet wide and 80 feet long and used to store carpet, although it was to have the exterior appearance of a house.

The defendant Mike Smidt appeared at a Green Acres homeowners meeting and announced his intention to build an 80 foot shed for the storage of carpet. He was told that he would be in violation of the restrictive covenants if he constructed a unit for that purpose. It is understood that carpet would be delivered to the unit through the use of a "box van" and pick-up trucks. It is possible that some carpet will be delivered from tractor-trailers pulled into the neighborhood.

The plaintiffs, Donald and Eileen Fox, live across the street from the defendants and filed suit in July 1993, requesting a temporary and permanent injunction prohibiting the defendants from building a shed, warehouse, or any building other than a residential unit. The case was tried to the court and it found that the defendants were constructing the building for the primary purpose of storing carpet and not as a single family dwelling. The court found that the defendants actions offended subparagraph (a) of the restrictive covenant agreement and permanently enjoined them from continuing the construction of the building except for the purpose of a single family dwelling. The defendants appeal. Our review is according to *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976).

The defendants raise two points on appeal. First, they claim that subparagraph (a) of the restrictive covenant limits the exterior appearance of the structure only and not the use of the structure. The defendants argue that their unit complies with that provision. The relevant provision is subparagraph (a), which reads as follows:

    a. All Lots hereinabove described shall be known and described as residential Lots, and no structures shall be erected, altered or placed or permitted to remain on any of said Lots other than one detached single-family dwellings (sic) and a private garage for not more than 2 cars.

The defendants argue that the words used in subparagraph (a) apply to the appearance and not to the use of the structure, citing *Maull v. Community Living For the Handicapped, Inc.,* 813 S.W.2d 90, 92 (Mo.App. 1991) and *Blevins v. Barry–Lawrence County Assn. For Retarded Citizens,* 707 S.W.2d 407, 410 (Mo. banc 1986).

■ To interpret the meaning of the restrictive covenants in the agreement, we look at the plain and obvious purpose of the restriction and give the terms their ordinary and usual meaning in the connection in which they are used. *Feely v. Birenbaum,* 554 S.W.2d 432, 435 (Mo.App.1977).

The court in Blevins was concerned with the operation of a group home for eight unrelated mentally retarded persons. The court held that the restrictive covenant that prohibited the erecting, altering, placing or permitting to remain any building, "other than single or double family dwellings not to exceed two and one-half stories in height and private garages for not more than two cars" did not prohibit the intended use because it was not a restriction on its use. *Blevins,* 707 S.W.2d at 410. Since the restrictive covenant did not define "family," the court reasoned that family did not necessarily exclude a group of unrelated persons. Id.

This is not the situation in this case. The Blevins courts definition of family is not applicable when the issue is the permissibility of the use of a structure to store carpets, which will be shipped in and out of the residential neighborhood by trucks. We are not dealing with the composition of a family and whether it includes only persons related by blood or marriage. The issue in this case is whether the restrictive covenant precludes a commercial use of the property.

This case is controlled by *Shepherd v. State,* 427 S.W.2d 382 (Mo.1968), which defined "residential purposes" as follows:

Giving the words their plain and ordinary meaning, we would say that such a building is one which is used for residential purposes—that is, one in which people reside or dwell, or in which they make their homes, as distinguished from one which is used for commercial or business purposes. *Id.* at 388. In fact, the Blevins court adopted the definition found in Shepherd. The court found that the operation of a group home had "all the characteristics of a residential as opposed to a commercial use." *Blevins,* 707 S.W.2d at 408.

In Maull, the court interpreted "single family" as a term describing the appearance of the structure and "residence" as describing the use to be made of the premises. *Maull,* 813 S.W.2d at 92. The court identified as the purpose of restrictive covenants "to preserve the aesthetic and residential nature of the subdivision.... If the term is a construction limitation only then buildings having the appearance of residences could be used solely for commercial purposes." Id. (emphasis added).

■ The evidence in this case is undisputed that the defendants intend to use the structure not as a family residence, but rather as a storage unit for carpets in a commercial enterprise. The clear meaning of the terms, "residential lots" and "one detached single-family dwelling" is directed to the buildings use. The phrases contemplate a building with a family residing in it and not one used for commercial purposes even though it has an exterior appearance of a residence. A "residential lot" is one designed for a structure in which people reside or dwell or on which they make their homes, as distinguished from one which is used for commercial or business purposes. *Shepherd,* 427 S.W.2d at 388. Point denied.

■ In their second point, the defendants complain that the court erred by failing to consider subparagraph (f), which states:

> f. No noxious or offensive trade or activity shall be carried on upon any plot nor shall anything be done which may be, or become, a nuisance to the neighborhood.

The defendants argue that this subparagraph allows the property to be used for commer-

cial purposes as long as it is not noxious, offensive or a nuisance per se. However, this interpretation of subparagraph (f) would override the clear intent of subparagraph (a) to keep the subdivision residential. Subparagraph (f) does not give the defendants permission to run a commercial enterprise in a residential neighborhood.

Judgment affirmed.

All concur.