STATE of Missouri, ex rel. Jeremiah W. (Jay) NIXON, Attorney General, Appellant–Respondent,

v.

Doyle CHILDERS, Director of Missouri Department of Natural Resources, The Missouri Department of Natural Resources, Respondent–Appellant,

Union Pacific Railroad Co., Respondent,

City of Boonville, Missouri, Amicus Curiae,

Raye Reynolds, Frederick Brunner, Pat Jones, G. Tracy Mehan, III, Steve Mahfood, Amicus Curiae.

Nos. WD 66892, WD 67051.

Missouri Court of Appeals, Western District.

Oct. 23, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 18, 2007.

Application for Transfer Denied Feb. 19, 2008.

Mark A. Mattingly, Esq., St. Louis, for Union Pacific.

Karen K. Mitchell, Esq., Jefferson City, for State of Missouri.

James K. Lowry, Esq., for respondent-appellants.

Dale Reesman, Esq., Boonville, MO, for City of Boonville.

Bruce A. Morrison, Esq., St. Louis, MO, for Amicus Curiaes.

Before: LOWENSTEIN, P.J., ELLIS and HARDWICK, JJ.

HARDWICK, Judge.

This appeal arises from a summary judgment ruling that the State of Missouri ("State") has no property rights in a railroad lift bridge ("Boonville bridge"), which crosses the Missouri River at Boonville, Missouri. The State contends the circuit court erred in determining that it did not acquire such rights under the terms of a contractual agreement between the Missouri Department of Natural Resources ("DNR") and the Missouri–Kansas–Texas Railroad Company ("MKT"). For reasons explained herein, we affirm the summary judgment.

### FACTUAL AND PROCEDURAL HISTORY

In September 1986, MKT filed an application with the Interstate Commerce Commission ("ICC") to abandon its right-of-way for railway lines in the counties of St. Charles, Warren, Montgomery, Callaway, Boone, Howard, Pettis, and Cooper, including the Boonville bridge. The ICC approved the application and authorized the right-of-way for interim trail use, pursuant to the National Trails System Act, 16 U.S.C. § 1247(d) (1983).

On June 25, 1987, MKT entered into an "Interim Trail Use Agreement" with DNR. The Agreement and a subsequent quitclaim deed conveyed 197.67 miles of the MKT right-of-way to DNR for development of the Katy Trail State Park. The Agreement provided that MKT was conveying all of its interest in the right-of-way except for the Boonville lift bridge. In that regard, paragraph six of the Agreement states in relevant part:

The property to be conveyed by MKT to MDNR consists of all of MKT's right, title, and interest in and to the following described real property and premises ... save and except those certain exceptions and exclusions set-forth in this paragraph six ...

Excepting and excluding from the said conveyance all of MKT's interest in the following described parcels of land and/or structures:

. . .

MKT's Boonville lift bridge, being MKT's Bridge No. 191.1 across the Missouri River at Boonville, Missouri. MKT agrees that said bridge shall be kept available for transportation purposes in accordance with ICC decision ex parte No. 274 (Sub.-No.13) and that MDNR upon execution of waivers of liability acceptable to MKT may utilize the bridge for trail purposes; provided, however, that MKT reserves the right to modify the bridge structure as may be required to improve rail transportation, so long as MDNR's right to utilize the premises for interim trail use is not adversely affected thereby.

Following the quitclaim conveyance, Union Pacific Railroad (UP) acquired MKT's interest in the Agreement and the Boonville bridge. During 2004, Stephen Mahfood, the Director of DNR, learned that UP intended to remove the Boonville bridge from its current location. DNR had never sought to utilize the bridge for trail purposes, but Director Mahfood wanted to preserve its future option to do so.

On October 12, 2004, Director Mahfood sent a letter notifying UP that DNR intended to preserve its rights to use the bridge, as set forth in the 1987 Agreement. UP responded that the Coast Guard had recommended removal of the bridge because it had not been used for transportation purposes for the past seventeen years. UP also stated that the bridge was expressly excluded from the right-of-way conveyance in the 1987 Agreement and

that the conditions for waiver of liability had not been met.

On December 23, 2004, Director Mahfood sent a letter offering UP a full waiver of liability for the bridge. However, in January 2005, Mr. Mahfood was replaced by Doyle Childers as Director of DNR. Director Childers subsequently executed an amendment to the 1987 Agreement, which allowed UP to remove the Boonville bridge. In a follow-up letter dated May 24, 2005, Director Childers informed UP that DNR was "releasing" and "permanently waiving" its rights, under paragraph six of the 1987 Agreement, to use the bridge for trail purposes.

On May 26, 2005, the State, by and through the Attorney General Jay Nixon, filed a lawsuit against Director Childers and DNR, seeking a declaration that the 1987 Agreement created property interests for the State in the Boonville bridge, and that the DNR Director had no authority to release, convey, or surrender those interests. The State later filed a Second Amended Petition, adding UP as a defendant.

The parties filed cross-motions for summary judgment. On April 25, 2006, the circuit court entered summary judgment against the State and in favor of the Director Childers, DNR, and UP on all counts of the petition. The court determined that UP never accepted DNR's offer to waive liability, and, thus, the condition precedent was not met under the 1987 Agreement for the State to acquire a property interest in the Boonville bridge. The court further concluded that the Director of DNR had authority to decline to acquire property rights to the bridge under Section 253.040, R.S.Mo.2000. The State appeals.

### ANALYSIS

The State contends summary judgment was improper because the circuit court erroneously determined that the State did not have a property right in the Boonville bridge. Based on the language of the 1987 Agreement, the State argues that it obtained: (1) negative easement rights to preclude MKT from taking adverse action with regard to the bridge, and (2) a future interest in the bridge by way of an affirmative easement that would "spring" into use once the waivers of liability were executed. The State further asserts that the easements constituted presently existing property rights, which the Director of DNR had no authority to release.

We review a grant of summary judgment *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law[.]" Rule 74.04(c)(6). Where, as here, the essential facts are not in question, disputes arising from the interpretation and application of a contract are matters of law for the court. *Care Ctr. of Kansas City v. Horton*, 173 S.W.3d 353, 355 (Mo.App. 2005).

In a contract case, summary judgment is appropriate when the meaning of the contract at issue is so apparent that it may be determined from the four corners of the document. *Dubinsky Realty, Inc. v. Vactec, Inc.*, 637 S.W.2d 190, 192 (Mo.App.1982). We must determine the intention of the parties from the language of the contract and in light of its full context. *Country. Club Dist. Homes Ass'n v. Country Club Christian Church*, 118 S.W.3d 185, 189 (Mo.App.2003). When the language of the contract is clear and unambiguous as to restrictions on the use of property, its meaning must be given effect. *Id.*

■ The State's arguments concerning the existence of negative and affirmative easements focuses exclusively on the description of MKT's interest in the bridge, as set forth in a sub-paragraph of paragraph six of the 1987 Agreement. The State asserts that, for purposes of discussion, the description can be divided into three clauses, as follows:

[1] MKT agrees that said bridge shall be kept available for transportation purposes in accordance with ICC decision ex parte No. 274 (Sub.-No.13) and [2] that MDNR upon execution of waivers of liability acceptable to MKT may utilize the bridge for trail purposes; [3] provided, however, that MKT reserves the right to modify the bridge structure as may be required to improve rail transportation, so long as MDNR's right to utilize the premises for interim trail use is not adversely affected thereby.

Based on this tripartite division, the State argues the first and third clauses created negative easements in its favor, which precluded MKT or UP from taking adverse action to remove the bridge. The State argues the second clause is independent from the remainder of the paragraph and, therefore, does not modify or apply to the first and third clauses. The State asserts the second clause creates a future interest in an affirmative easement that would allow the State to use the bridge for trail purposes upon execution of appropriate waivers of liability.

We disagree with the State's interpretation of the 1987 Agreement because it excludes any consideration of the introductory language in paragraph six. The first sub-paragraph of paragraph six clearly states that MKT is conveying to DNR all of its interest in the right-of-way "save and except those certain exceptions and exclusions set-forth in this paragraph six." In a later sub-paragraph entitled "Excepting and Excluding," the Agreement states "Excepting and excluding from the said conveyance all of MKT's interest in the following described parcels of land and/or structure." The Boonville bridge is thereafter expressly identified as one of the structures excluded from the conveyance of property.

Read as a whole, paragraph six indicates that MKT retains all property rights in the Boonville bridge but is restricted with regard to modifications. MKT must maintain the bridge in accordance with ICC requirements and must not make modifications that adversely affect DNR's rights of interim trail use on the adjacent property. Paragraph six also describes how DNR *can* obtain rights to use the bridge for trail purposes *if* waivers of liability are accepted by MKT. The availability of this option neither alters the exclusion of the bridge from the conveyance nor grants any presently existing property rights to DNR or the State. The language of paragraph six merely creates a condition precedent by which DNR could obtain such rights upon MKT's consent.

In addition to the 1987 Agreement, the parties also executed a quitclaim deed conveying MKT's interest in the right-of-way to DNR. The 1987 Agreement is attached to the quitclaim deed as Exhibit 1 and is incorporated by reference. Consistent with the Agreement, the quitclaim deed also clearly exempts the Boonville bridge from the conveyance. The deed describes the property transferred to DNR and then states:

Save and except, however, the following:
. . .
(2) Grantor's Boonville lift bridge, being Bridge No. 191.1 across the Missouri River at Boonville, Missouri, together with all piers, abutments, approaches and appurtenances thereto, and the land thereunder.

It being Grantor's intention to convey hereby all of its remaining St. Louis and Sedalia Subdivision right-of-way in Howard County, Missouri save and except Grantor's New Franklin station grounds and its Boonville lift bridge, as aforesaid.

The deed leaves no doubt about the parties' intention to exclude the Boonville bridge from the property conveyed to the DNR for purposes of interim trail use. Based on the language of the 1987 Agreement and the quitclaim deed, the circuit court correctly determined that neither DNR nor the State has an existing property interest in the Boonville bridge.

CONCLUSION

The summary judgment is affirmed.[1]

All concur.

---

**1.** In light of our affirmance, we need not address the cross-appeal by Mr. Childers and DNR, which alleges the circuit court erred in denying their Motion to Disqualify the Attorney General's Office from representing the State of Missouri in this matter.