

# Missouri Court of Appeals
## Southern District

### In Division

JAMES SANCHEZ, in his capacity as )
President of INTERNATIONAL )
BROTHERHOOD OF ELECTRICAL )
WORKERS, LOCAL UNION 702, )
)
KEITH ATCHISON, in his capacity as )
Vice-President of INTERNATIONAL )
BROTHERHOOD OF ELECTRICAL )
WORKERS, LOCAL UNION 702, and )
)
QUINTON TILLMAN, )
)
       Plaintiffs-Appellants, )
v. ) No. SD38656
) Filed: May 28, 2025
CITY OF POPLAR BLUFF, MISSOURI, )
)
       Defendant-Respondent. )

APPEAL FROM THE CIRCUIT COURT OF BUTLER COUNTY

Honorable Michael M. Pritchett, Circuit Judge

**AFFIRMED**

Plaintiffs James Sanchez, in his capacity as President of International Brotherhood of Electrical Workers Local Union 702 (Union), Keith Atchison, in his capacity as Vice-President of the Union, and Union member Quinton Tillman (referred to collectively as Plaintiffs and individually by their surnames) brought this breach-of-contract action against the defendant, the City of Poplar Bluff, Missouri (City). Sanchez and Atchison were named

as representatives of the Union.  *See* Rule 52.10; ***In Their Representative Capacity as Trs. for Indian Springs Owners v. Greeves***, 277 S.W.3d 793, 798 (Mo. App. 2009) (an unincorporated association may sue by designating certain members as representative parties in an action, so long as they fairly and adequately protect the interest of the association and its members).

The Union and City are parties to a Water-Sewer Department Collective Bargaining Agreement (WSD Agreement).  When the City posted a notice regarding a job opening for a Water Plant Operator, Tillman and Daniel Sparks (Sparks) applied.  The City hired Sparks, who was more qualified for the position.  Plaintiffs subsequently brought the underlying suit, claiming the City breached the WSD Agreement when it did not hire Tillman.  Plaintiffs and the City filed cross-motions for summary judgment, and the trial court entered judgment in favor of the City.  This appeal by Plaintiffs followed.  We affirm.

*Standard of Review*

Summary judgment shall be granted if "the motion, the response, the reply and the sur-reply show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law[.]"  Rule 74.04(c)(6); ***Jungers v. Webster Elec. Coop., Inc.***, 577 S.W.3d 498, 500 (Mo. App. 2019).[1]  Facts enter a summary judgment record "*only* via Rule 74.04(c)'s numbered-paragraphs-and-responses framework[,]" and we therefore review summary judgment based on the Rule 74.04(c) record, not the whole trial court record. ***Jones v. Union Pac. R.R. Co.***, 508 S.W.3d 159, 161 (Mo. App. 2016) (italics in original).  "We view the record in the light most favorable to the non-moving party, drawing all inferences in that party's favor."  ***Progressive Max Ins. Co. v. Hopkins***, 531

---

[1]  All rule references are to Missouri Court Rules (2024).

S.W.3d 649, 651 (Mo. App. 2017). "Summary judgment should not be granted unless the evidence could not support any reasonable inference for the non-moving party." ***Grissom v. First Nat. Ins. Agency***, 364 S.W.3d 728, 732 (Mo. App. 2012).

A defending party is entitled to summary judgment if that party shows one of the following:

> (1) Facts negating any one of the claimant's elements; (2) that the party opposing the motion has presented insufficient evidence to allow the finding of the existence of any one of the claimant's elements; or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support a properly pleaded affirmative defense.

***Ameristar Jet Charter, Inc. v. Dodson Int'l Parts, Inc.***, 155 S.W.3d 50, 58-59 (Mo. banc 2005). Here, Plaintiffs' underlying petition against the City raised a single claim of breach of contract. To establish a breach-of-contract action, the facts must show: "(1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." ***Bell v. Shelter Gen. Ins. Co.***, 701 S.W.3d 614, 618 (Mo. banc 2024) (citation omitted).

The element of Plaintiffs' action at issue in the parties' cross-motions for summary judgment was whether the City breached the WSD Agreement. The stated legal basis for Plaintiffs' motion for summary judgment was that the City breached the WSD agreement by failing to hire Tillman to fill the open Water Plant Operator position. As the defending party, the legal basis for the City's motion was that no breach of the WSD Agreement occurred. "The granting of summary judgment is an issue of law which we review *de novo*." ***Williams v. Hutcheson Enterprises, Inc.***, 699 S.W.3d 244, 247 (Mo. App. 2024).

3

*Factual and Procedural Background*

The material facts are not in dispute. The City's municipal utilities consist of two departments: the Electrical Department and the Water-Sewer Department. The Water-Sewer Department includes the City's Water Plant, which operates 24 hours a day, 7 days a week. Those City employees working in the Water-Sewer Department are covered under the WSD Agreement, and those working in the Electrical Department are covered under a separate, Electrical Department Collective Bargaining Agreement.

At all times relevant herein, Sparks worked in a position that alternated coverage under both agreements because he worked in both departments. Sparks began his employment with the City in November 1997, starting out as a Maintenance Mechanic II. In that position, he was to "perform extensive and general maintenance of vehicles and equipment" and "[a]ct as a backup operator in [the] Water Plant[.]" When hired, Sparks was assigned an employee number in both the Electrical and Water-Sewer departments.

The Water Plant Operator classification is in the Water-Sewer Department, which is covered by the WSD Agreement. Article XXII of the WSD Agreement governs both "Water Plant Operators and Operator/Maintenance Mechanics" and sets forth licensing requirements. In relevant part, Section 3 provides that:

> Water Plant Operators and Operator/Maintenance Mechanics must have at least a "C" level license to operate and perform testing. If they do not have a license at the date of hire, they must obtain the license within two (2) years[.]

Similarly, in Article XX, the WSD Agreement also includes both "Operator/Maint. Mechanic" and "Water Plant Operator" as job titles in the list of wages for Water-Sewer

Department employees. The two positions are also addressed together in Article XXI governing "Overtime" in Section 2.[2]

In November 1998, Sparks obtained his Class "C" Water Operator's License. By April 1999, Sparks' job classification had changed to Maintenance Mechanic I. This meant that he would have additional maintenance duties and continue to act as a "backup operator in the Water Plant[.]" When Sparks worked as an employee in the Water-Sewer Department, he was paid wages pursuant to the WSD Agreement at the "Water Plant Operator – 'C' License" rate of pay. By late 2020, Sparks had served as a backup Water Plant Operator for the City for 22 years.[3]

In July 2020, Tillman began working as a "Laborer" in the Water-Sewer Department. At all times relevant herein, Tillman did not possess a Class "C" Water Operator's License.

In the fall of 2021, a Water Plant Operator gave notice that he was retiring and his last day would be in mid-January 2022. On December 13, 2021, the City posted a notice announcing the "Job Opening – Water Plant Operator" position. The notice specified that the City would "[p]refer applicant to have a Water Operator's Certificate, minimum of a 'C' Missouri License" with "two (2) years of experience." The notice also stated that "[i]f applicant does not meet licensing requirement, applicant must be able to obtain a Water Operator's Certificate, minimum of a 'C' License within two (2) years of employment."

---

[2] Section 2 of Article XXI provides that "Water Plant Operators and Relief Operators required to work back to back shifts from 4:00 P.M. to 12:00 A.M. and 12:00 A.M. to 8:00 A.M. shall receive two (2) times their normal rate."

[3] Sparks earned approximately half of his wages while assigned to work in the Water-Sewer Department during the five years before he was awarded the Water Plant Operator position. Specifically, Sparks worked as an employee in both the Electrical and Water-Sewer departments, with his wages for working in the Water-Sewer Department being approximately: 49% of his wages in 2017; 62% of his wages in 2018; 51% of his wages in 2019; 37% of his wages in 2020; and 51% of his wages in 2021.

The City's right to hire an applicant for this position is addressed in the WSD Agreement. Article V of that agreement is entitled "Management Rights" and affords the City the "full and unrestricted rights" to, *inter alia*, "direct the operation of and manage all manpower," provided these rights do not conflict with or violate any of the terms of the WSD Agreement.

As noted previously, both Sparks and Tillman applied for the open Water Plant Operator position.[4] When Tillman applied, he was working full-time in the Water-Sewer Department. Although he did not meet the class "C" licensing requirement, he met the minimum qualifications for the open position. When Sparks applied, he was assigned to the Electrical Department working as a Maintenance Mechanic I. As such, Sparks was also assigned to work as a backup Water Plant Operator in the Water-Sewer Department as needed, subject to the WSD Agreement while performing such assignments. After interviewing the applicants, the City hired Sparks to fill the position.

Thereafter, Plaintiffs filed their petition against the City raising a single claim of breach of the WSD Agreement. The parties filed their cross-motions for summary judgment and suggestions in support. The trial court agreed with the City and entered judgment in the City's favor. This appeal followed.

Presenting a single point on appeal, Plaintiffs contend the trial court erred in granting the City's motion for summary judgment because Plaintiffs are entitled to judgment as a matter of law. According to Plaintiffs, there is no dispute of material fact, and the "clear and unambiguous" language of the WSD Agreement required the City "to award the vacant Water Plant Operator position to Tillman." We disagree.

---

[4] A third applicant, also a Maintenance Mechanic, applied for the position, but that person was not involved in the underlying suit.

In analyzing the terms of a collective bargaining agreement, we recognize that it "is simply a contract, subject to the same rules of interpretation as other contracts." *IBEW Local Union No. 53 v. City of Independence*, 582 S.W.3d 153, 158 (Mo. App. 2019); *see Allen v. Globe-Democrat Pub. Co.*, 368 S.W.2d 460, 463 (Mo. 1963). "The primary rule in the interpretation of a contract is to ascertain the intent of the parties and to give effect to that intent." *IBEW Local Union No. 53*, 582 S.W.3d at 158; *Marshall v Pyramid Dev. Corp.*, 855 S.W.2d 403, 406 (Mo. App. 1993). To ascertain the parties' intent, a court should "review the terms of a contract as a whole, not in isolation." *Tuttle v. Muenks*, 21 S.W.3d 6, 11 (Mo. App. 2000). Where the language is clear and unambiguous, the intent of the parties is to be discerned from the contract alone. *See Country Club Dist. Homes Ass'n v. Country Club Christian Church*, 118 S.W.3d 185, 189 (Mo. App. 2003) ("it is neither necessary nor proper to inquire into the surrounding circumstances for aid in its construction"). This Court must give the words used by the parties in an agreement their natural and ordinary meaning, and we are not permitted to "add provisions by judicial interpretation." *Goodman v. Goodman*, 576 S.W.2d 747, 749 (Mo. App. 1979); *IBEW Local Union No. 53*, 582 S.W.3d at 159; *see also Allen*, 368 S.W.2d at 467.

At issue here in the WSD Agreement is Article IX governing "Vacancies." Of particular interest is Section 2 of Article IX, which provides that any employee covered by the bargaining agreement could apply for the vacant position:

> Section 2. ***Any employee covered by this bargaining agreement may make application for the vacant position***. In filling the position, when no applications are obtained from the department, the City will give job preference to the City employees, if factors including experience, job knowledge and education are equal.

7

(Emphasis added.)  The parties agree that the WSD Agreement, and specifically Article IX, Section 2, is "clear and unambiguous."   We therefore discern the parties' intent from the WSD Agreement alone.  *See* **Country Club Dist. Homes Ass'n**, 118 S.W.3d at 189.

According to Plaintiffs' interpretation of Section 2 above, any employee working in the Water-Sewer Department covered by the WSD Agreement may apply for the position and will be given job preference for the position over other City employees who may apply.[5] Plaintiffs argue that the WSD Agreement required the City to award Tillman the Water Plant Operator position because "Tillman was the only Water-Sewer Department employee to apply for the vacant position."

We disagree with this argument because Tillman was not the only Water-Sewer Department employee to apply for the position. Assuming – without deciding – that Plaintiffs' interpretation of Section 2 of Article IX is correct, we are unpersuaded by Plaintiffs' argument that Sparks was *not* an employee covered by the WSD Agreement. Plaintiffs argue Sparks was not covered by the WSD Agreement because:  (1) at the time Sparks applied, he was working in the Electrical Department, not the Water-Sewer Department; and (2) Sparks was only "temporarily assigned" to work in the Water-Sewer Department.  These arguments lack merit for the following reasons.

As a "Maintenance Mechanic I," Sparks was required to work as a backup Water Plant Operator in the Water-Sewer Department.   The WSD Agreement specifically references the position "Operator/Maint. Mechanic" for which the rate of pay is identical to

---

[5] As we understand Plaintiffs' interpretation, Water-Sewer Department employees must be given preference because only "when no applications are obtained from the department" is the City free to consider applicants outside the department.  It is only then the City is directed to give job preference to City applicants over other applicants, "if factors including experience, job knowledge and education are equal."

that of a "Water Plant Operator" holding the same license. Thus, Sparks qualified as "any employee" covered by the WSD Agreement to apply for the open position, as required by Section 2 of Article IX. Reviewing the terms of the WSD Agreement as a whole, not in isolation, shows "Water Plant Operators and Operator/Maintenance Mechanics" are addressed together when discussing licensing requirements in Article XXII, and in at least two other articles concerning wages and overtime. Discussing these two positions together in the WSD Agreement indicates the parties intended that an "Operator/Maintenance Mechanic" be included under that agreement and share similar treatment as a "Water Plant Operator," likely because a backup Water Plant Operator might be needed at any time. Thus, given Sparks' backup responsibilities in the Water-Sewer Department as a Maintenance Mechanic I, he was an employee covered by the WSD Agreement.

Similarly, the parties agreed that, at the time Sparks applied for the open Water Plant Operator position, he was a Maintenance Mechanic I assigned to work both in the Electrical Department *and* the Water-Sewer Department as needed, and he was paid and covered by the WSD Agreement when he worked as a backup Water Plant Operator in the Water-Sewer Department. Thus, the fact that Sparks was working in the Electrical Department, not the Water-Sewer Department, at the time he applied for the open position is not determinative of whether he was also an employee covered under the WSD Agreement.

Lastly, the argument that Sparks was only "temporarily assigned" and did not work full-time in the Water-Sewer Department also lacks merit. There is no language in Section 2 of Article IX that requires a potential applicant to work full-time in the Water-Sewer Department. This Court will not insert requirements in the WSD Agreement which are not there. *See IBEW Local Union No. 53*, 582 S.W.3d at 159. As our Supreme Court explained in *Allen*, 368 S.W.2d at 467:

9

> In interpreting a collective bargaining agreement we must construe [provisions] as written, not as we may think they should have been written, and certainly not by interpolating words in them which are not there.

*Id*.; *see IBEW Local Union No. 53*, 582 S.W.3d at 159 (courts should not add provisions by judicial interpretation and should not inject words that are not there); *see also Goodman*, 576 S.W.2d at 749 (similar holding).

Thus, Sparks met the definition of "any employee" covered by the WSD Agreement when he applied for the open Water Plant Operator position, as required by Section 2 of Article IX. Tillman was not the only employee of the Water-Sewer Department to apply for the position. As such, Plaintiffs' argument that Tillman be given job preference for the position over other City employees fails. Further, given that both applicants were covered under the WSD Agreement, there is nothing in the record to suggest that Tillman would be given preference over a superiorly qualified employee assigned to the Water-Sewer Department, such as Sparks. Finally, as established herein, because the City's decision to award Sparks the open Water Plant Operator position did not violate Article IX, Section 2 of the WSD Agreement, the City's decision to hire Sparks was well within the City's management rights under that same agreement.

In sum, the City established that: (1) Plaintiffs could not prove the City breached the WSD Agreement by hiring Sparks instead of Tillman; and (2) the City was entitled to judgment as a matter of law on the sole claim pleaded in the petition. *See Bell*, 701 S.W.3d at 618; *Ameristar Jet Charter, Inc.*, 155 S.W.3d at 58-59. Therefore, the trial court correctly granted the City's motion for summary judgment.

The trial court's judgment in favor of the City is affirmed.


JEFFREY W. BATES, J. – OPINION AUTHOR

10

MARY W. SHEFFIELD, J. – CONCUR

JENNIFER R. GROWCOCK, C.J. – CONCUR